## Commonwealth *v.* Melinkoff, Appellant.

*Criminal law—Cross-examination of prisoner as to his name—Evidence.*

On the trial of an indictment for crime, where the defendant has gone upon the stand and distinctly testified as to his name, the district attorney may be permitted to ask him on cross-examination whether he had ever been known by any other name. Such a question is not forbidden by the Act of March 15, 1911, P. L. 20, which provides that a person charged with crime shall not be required to answer any question tending to show that he had committed, "or been charged with, or been convicted of any offense, other than the one wherewith he shall then be charged, or tending to show that he had been of bad character or reputation."

*Criminal law—Assault and battery—Scar on face of prosecutor—Evidence.*

On the trial of an indictment for assault and battery where the prosecutor, a professional pugilist, testified that the defendant had struck him in the face, and that a scar upon his face shown to the jury had resulted from that cut, it is not error for the trial court to refuse to withdraw a juror and continue the case because the district attorney in his closing argument showed to the jury the scar on the prosecutor's face, alleged to have been caused by the assault.

Argued May 3, 1915. Appeal, No. 59, Oct. T., 1915, by defendant from judgment of O. & T. Philadelphia Co., Feb. Sessions, 1915, No. 413, on verdict of guilty in case

of Commonwealth v. Jacob Melinkoff.   Before RICE, P.
J., ORLADY, HEAD, PORTER, HENDERSON, KEPHART and
TREXLER, JJ.   Affirmed.

Indictment for assault and battery.

At the trial the prisoner was cross-examined by the
district attorney as follows:

Q. What is your name?

A. Jacob Melinkoff.

Q. What other names?

A. Jake Melinkoff.

Q. When was your name John Gordon?

A. Never.

Q. When were you known as John Gordon?

A. Never.

Q. Weren't you known as Harry Myers?

(Objected to.)

The Court: I don't think it is competent.

Mr. Rogers: Here is a man who goes on the witness
stand and says his name is Jacob Melinkoff.

The Witness: Jacob Melinkoff.

Mr. Rogers: I want to show that he is known as John
Gordon and Harry Myers.

The Court: All right, I will allow you to ask this
question.

Exception allowed to defendant.   (1)

Q. Weren't you known as John Gordon?

Mr. Salus: I ask that a juror be withdrawn at this
time for the reason that Mr. Rogers is now reading from
some record of some prisoner and I say that is highly
improper and has nothing to do with this case, and he
has no right to have in his hand the record of anybody
while he is cross-examining the witness, and I ask that
a juror be withdrawn.

The Court: The court does not know what counsel has
in his hand.   I will allow the question as to the names
and I refuse to withdraw a juror.   Exception.   (2)

Mr. Rogers in summing up the Commonwealth's case

showed to the jury a scar on Mr. Hanlon's face caused by the alleged cutting.

Mr. Salus: At this moment I ask that a juror be withdrawn for this particular reason: That in the summing up of a case the district attorney has no right to sum up his case as he has done—no more right to put Hanlon in the box than he has to put his hands down in his pockets and pull out a new bunch of evidence, which he has no right at all to do, and I ask now that a juror be withdrawn.

The Court: The mark has already been offered in evidence. I do not think it is good ground.

Motion refused.

Exception allowed. (3)

Mr. Salus: I now ask that the court give binding instructions to render a verdict of not guilty or to withdraw a juror, for the reason that the district attorney in his examination of Melinkoff violated all the principles and rules and the meaning of the Act of 1911, which is for the protection of witnesses charged with offenses on the stand, in being cross-examined.

Motion refused.

Exception allowed. (4)

Verdict of guilty upon which judgment of sentence was passed.

*Errors assigned* were above rulings quoting the bill of exceptions.

*Samuel W. Salus,* for appellant.—The cross-examination as defendant's name was improper: Hildeburn v. Curran, 65 Pa. 59; Snyder v. Com., 85 Pa. 519; Com. v. Grauman, 52 Pa. Superior Ct. 215; Com. v. House, 223 Pa. 487; Shaffner v. Com., 72 Pa. 60; Com. v. Racco, 225 Pa. 113; Com. v. Burwell, 21 D. R. 197; Com. v. Rosmovicz, 21 D. R. 1027; People v. Derbert, 138 Cal. 467; People v. Wells, 100 Cal. 459; People v. Mullings. 83 Cal. 138.

The district attorney in his final argument to the jury had no right to take the prosecutor into the jury box and go into the jury box himself and have the jurymen crowd around him, for the purpose of exhibiting an alleged cut to the jury : Com. v. Pearl, 33 Pa. Superior Ct. 97 ; Com. v. Windish, 176 Pa. 167.

*Joseph P. Rogers,* Assistant District Attorney, with him *Samuel P. Rotan,* District Attorney, for appellee.

OPINION BY PORTER, J., July 21, 1915 :

The defendant, who is here the appellant, was upon his trial in the court below, called as a witness in his own behalf.  In his examination in chief he was asked, by his own counsel, "Q. What is your name?" and to that question he replied, "Jacob Melinkoff."  The district attorney, in cross-examining the defendant, was permitted by the court to ask him whether he had been known as John Gordon or Harry Myers.  These questions were objected to and an exception allowed the defendant.  The defendant answered these questions by an explicit denial that he had ever been known by either of said names, and the Commonwealth made no attempt to contradict such denial.  The rulings of the court in permitting the district attorney to ask these questions are the subject of the first, second and fourth specifications of error.  It may here be stated that the learned counsel for the appellant has argued that the district attorney, when he asked the defendant whether he had been known as John Gordon, was reading from a paper which contained the record of some prisoner, but the record does not disclose that the district attorney was reading from any paper, or if he was reading from a paper that such paper contained the record of any prisoner.  No such paper was offered in evidence by the Commonwealth or the defendant, nor does it appear of record in this case. The Commonwealth made no attempt to prove that any man bearing the name of John Gordon or Harry Myers

had ever been charged with or convicted of any offense whatever. The only question raised by these specifications is whether it is error to permit the district attorney, in cross-examination of a defendant who has distinctly testified as to his name to ask him whether he had ever been known by any other name.

The question asked in the cross-examination, of which the appellant complains, related expressly to a matter brought out in the direct examination of the defendant, what was his true name. The defendant having testified as to the fact in his examination in chief, it would certainly seem to be proper, in the absence of a statute directing otherwise, to permit the district attorney to cross-examine him as to that allegation of fact. The proper rule for the cross-examination of a defendant who testifies in his own behalf, except as regulated by statute, was stated by the Supreme Court in Com. v. Racco, 225 Pa. 113, where the opinion cited with approval the doctrine laid down in Underhill on Criminal Evidence, as follows: "The accused, when testifying in his own behalf, waives many of the peculiar constitutional privileges which belong to him as one accused of crime. It is usually provided by statute that he may be examined and cross-examined 'as any other witness,' and where such is the case he will not be permitted to claim any privilege while he is a witness that is not enjoyed by other witnesses. In other words, the rule then is that he cannot claim as a witness the privileges which belong to him solely as the accused. He cannot complain if considerable latitude is allowed on his cross-examination, and, generally, he may be asked on his cross-examination, the same questions as any witness. In states where the cross-examination of the accused is not by statute expressly limited to matters brought out in his direct examination, he may be cross-examined, not only upon matters strictly relevant to the issue, but upon those which are collateral and apparently irrelevant and which are calculated only to test the credibility and weight of

his testimony. He may be questioned as to specific facts calculated to discredit him." The learned counsel for the appellant argues, however, that the questions which the district attorney was permitted to ask in this case were in violation of the Act of March 15, 1911, P. L. 20, the relevant provisions of which are as follows: "That hereafter any person charged with any crime and called as a witness in his own behalf, shall not be asked, and, if asked, shall not be required to answer, any question tending to show that he has committed, or been charged with, or been convicted of any offense other than the one wherewith he shall then be charged, or tending to show that he has been of bad character or reputation." This statute modified the rule as laid down by the Supreme Court in Com. v. Racco, supra, to the extent that it relieved a defendant from being asked or required to answer any question tending to show that he had committed, been charged with, or been convicted of any offense, other than the one for which he was then being tried, or tending to show that he has been of bad character or reputation. Except as thus expressly limited by this statute, a defendant who testifies in his own behalf is subject to the same rules as to cross-examination which apply to any other witness. The name by which a man is known is one of the elements which enable us to identify him. To show that a man has been known by two or more different names, without more, does not tend to establish that he has committed any offense, or that he has been of bad character or reputation. Many distinguished writers, actors, artists, baseball players, and others who contribute to the instruction or entertainment of the public, are known to that public by a name entirely different from that which they bear in private life. A plurality of names does not of itself indicate that the person who is known by more than one name is a criminal or of bad reputation. The first, second and fourth specifications of error are dismissed.

The third specification of error complains of the re-

fusal of the court to withdraw a juror and continue the case for the reason that the district attorney in his closing argument showed to the jury a scar on the face of the prosecutor alleged to have resulted from a cut inflicted by the defendant. The prosecutor had testified that the defendant had cut him in the face, that the scar upon his face had resulted from that cut and the scar had been identified and exhibited to the jury in direct connection with his testimony. The scar was thus unquestionably put in evidence. The testimony disclosed that the prosecutor, the man who bore the scar, had been a professional prize fighter. The learned counsel for the appellant no doubt argued in the court below, as he has argued here, that this scar might have resulted from a blow which the prosecutor had received in a prize fight. This being the case, it was entirely proper for the district attorney to have the jury, who were to pass upon the disputed facts, closely examine the scar, in order that they might have all the light possible to enable them to intelligently pass upon the question whether it was the result of a blow from a man's fist or from the cut of a knife. This specification of error is without merit.

The judgment is affirmed.